J. D. Presley and Herman Presley *v.* The State.

(*Nashville,* December Term, 1929.)

Opinion filed July 19, 1930.

R. R. Bond and Clarence Friedman, for plaintiff in error.

Nat Tipton, Assistant Attorney-General, for defendant in error.

Mr. Justice Swiggart delivered the opinion of the Court.

The plaintiffs in error were jointly indicted, tried and convicted for an assault with intent to commit murder in the first degree. The punishment assessed against J. D. Presley is confinement in the penitentiary for not less than three years nor more than eleven years. The punishment assessed against Herman Presley is the minimum term of three years, fixed by law for the offense of an assault with intent to commit murder in the first degree.

The contention urged in support of the appeal of J. D. Presley is that the evidence fails to sustain a conviction for assault with intent to commit murder in the first degree, but that his offense is a lesser degree of felonious assault, not involving premeditation or deliberation.

The victim of the assault was the wife of J. D. Presley. She had a short time before instituted an action for divorce. The assault was committed about 9 P. M. From an hour in the late afternoon until Mrs. Presley left her place of employment, about 8:30 P. M., the two plaintiffs in error were lurking near-by, as if to watch the movements of Mrs. Presley, and when she left, they followed her to the Confederate Memorial Park, a few

blocks distant. There they came upon her engaged in conversation with R. E. Stamps, standing near or against an ornamental cannon. Three witnesses, other than Mrs. Presley, testified that there was nothing in the conduct or attitude of Mrs. Presley to suggest or indicate any misconduct, and the evidence of these witnesses, accepted by the jury and trial judge, is that J. D. Presley made an unprovoked and unjustifiable assault upon his wife and upon Stamps. The evidence of the State is that when, in answer to his inquiry, Presley was informed that Stamps was offering employment to Mrs. Presley, he first struck her and then assaulted Stamps with a knife; that after he had knocked Stamps down and had stabbed him, he pursued his wife, who was fleeing, and, after tripping her and throwing her to the ground, he stabbed her several times in the left side and arm; and desisted from this assault only at the interference and intervention of the witness Brown.

During the assault, Herman Presley, a younger brother (J. D. Presley was about thirty-four years of age, while Herman was nineteen years of age), was present aiding and abetting his brother by restraining the bystanders, particularly the witness Taylor, from interfering in what he termed "a family matter."

The evidence of the two Presleys, supported by the testimony of James B. Leach, a person whom J. D. Presley met in jail, is that Stamps and Mrs. Presley were engaged in an act of gross indecency when J. D. Presley came upon them; that Stamps first assaulted Presley with a knife; and that Mrs. Presley drew a pistol on him, which he took from her. A fourth witness, Branch Goss, fails to support the plaintiffs in error in this defense.

Stamps and Mrs. Presley were in plain sight of several persons from the time they entered the park, and

the testimony of the plaintiffs in error is not only inherently unreasonable, but is contradicted by credible evidence, which the jury and trial judge have accepted.

Whether J. D. Presley is guilty of a deliberate and premeditated assault with intent to kill, constituting murder in the first degree, depends upon whether his resort to violence was the result of motive or passion created in his mind after he came in contact with his wife and Stamps, or whether he had previously formed the design and intent to make the assault if and when he came upon his wife in the park in company with another man. This was essentially a question or inference of fact for the jury and trial judge. According to the evidence of the State, there was nothing to excite or provoke the assault except the presence of the parties, and we think the evidence justified the inference made by the jury that this plaintiff in error followed his wife with the intent and purpose to do her harm, at least in the event he should find her with another man. There is no preponderance of evidence against this finding.

"If the design to kill was formed with deliberation and premeditation, it is immaterial that defendant was in a passion or excited when the design was carried into effect." *Leonard* v. *State*, 155 Tenn., 325, 338.

The record indicates that the jury had no difficulty in reaching the conclusion that the assault committed by J. D. Presley was accompanied by such deliberation and premeditation that it constituted an assault with intent to commit murder in the first degree. The case against Herman Presley was not so clear to them, and they propounded to the trial judge an inquiry: "Whether or not we can find Herman Presley guilty of a different degree of crime than we might find J. D. Presley."

To this inquiry the trial judge responded as follows:

"The court charges you that you are the sole judges of the guilt or innocence of the defendants and of the different degrees of crime heretofore defined and explained to you."

This failure of the trial judge to respond definitely to the inquiry of the jury was the result of an admitted uncertainty on his part as to the correct answer. The same uncertainty confused the minds of the jury; and in their verdict finding Herman Presley guilty of an assault with intent to commit murder in the first degree, the jury not only assessed the minimum punishment against Herman Presley, but recommended that the mercy of the court be extended to him.

We not only think that Herman Presley was entitled to have the jury given an affirmative answer to their inquiry, but that, since the charge as given failed to differentiate his status from that of his brother, and the jury had indicated confusion on the point, additional instructions should have been given to guide the jury in determining the degree of Herman Presley's guilt.

In so far as the guilt of Herman Presley of some degree of an unlawful assault is concerned, there can be no question upon the proof but that he was present aiding and abetting his brother by preventing the interference of bystanders in behalf of Mrs. Presley. The intervention and assistance of Herman Presley was rendered indisputably unlawful by the unlawfulness of the actions of J. D. Presley, in whose behalf the assistance was rendered. *Johnson* v. *State,* 125 Tenn., 425, 434-435, and cases there cited.

And if Herman Presley had knowledge of the fact that his brother had followed his wife with intent to as-

sault her, or to do her violence, and came with his brother to assist him and did assist him, his guilt as an aider and abetter is in the same degree as that of his brother in whose unlawful purpose and design he shared. *Moody* v. *State*, 46 Tenn. (6 Cold.), 299; *Reagan* v. *State*, 155 Tenn., 397.

In *Riggs* v. *State*, 43 Tenn. (3 Cold.), 85, this court noted the converse of the rule stated in *Moody* v. *State, supra,* thus: " 'yet if many be together upon a lawful account, and one of the company kill another of an adverse party, without any particular abetment of the rest to this fact of homicide, they are not all guilty that are of the company, but only those that gave the stroke, or actually abetted them to do it.' " In such case, since the guilt of the abetter arises, not from his presence with the person who strikes the blow, but from the fact of his own participation, it would seem that the degree of his guilt is to be determined according to his own criminal intent and not according to the intent and degree of guilt of the principal offender.

What is the degree of Herman Presley's guilt, assuming the truth of his testimony that he had no knowledge or intimation of his brother's purpose to harm his wife, but went with his brother with the sole idea of watching the movements of his wife in the hope of securing information which would aid his brother in the defense of the divorce action then pending; and upon the assumption that the aid which he rendered his brother was without express malice or premeditation on his part, and without knowledge that his brother contemplated making the assault until it had actually begun? Assuming that Herman Presley's aid, given under such circumstances, was unlawful, and rendered him guilty

of some degree of unlawful assault (*Johnson* v. *State, supra*), the rule in other jurisdictions appears to be that the degree of guilt of the aider and abetter is controlled by his own mental attitude and intent, and is not necessarily the same as that of the person whom he aids. Our cases do not appear to have expressly considered the point.

The rule is thus stated in 29 Corpus Juris, 1076-1077 (Homicide, section 49):

"One who participates in the commission of a homicide as a principal in the second degree or as an accessory before the fact with the same intent and purpose as the one who actually perpetrates the killing is guilty of the same degree or grade of homicide. But one who participates in the commission of a homicide as a principal in the second degree or as an accessory before the fact is not necessarily guilty of the same grade or degree of homicide as the actual perpetrator. Thus, although the direct actor in the commission of the homicide is guilty of murder, as defined by common law, one who participates as a principal in the second degree or as an accessory before the fact may be guilty of manslaughter only, if he acted without malice and without knowledge of malice of the principal in the first degree. On the other hand, the direct actor may be guilty of manslaughter only, and the principal in the second degree, or accessory before the fact, of murder, if the latter participated maliciously while the former was acting in sudden heat of passion due to adequate provocation, and without malice. Like rules apply to cases of assault with intent to commit murder."

We have found no authorities contrary to the text quoted from Corpus Juris. In an early case before the King's Bench Division (1553), reported in 1 Plowden,

100, 75 English Reprint, 158, one Salisbury was tried for murder with three others. The three codefendants of Salisbury had set upon one Ellis. Finding them thus engaged, Salisbury took part and killed a servant, of Ellis. It was agreed that the three were guilty of murder, but as to Salisbury this question was propounded to the court: "if so be in truth, John Vane Salisbury was in the company of them, who of their malice prepense killed him that is dead, and when he saw them combatting together, took part with them suddenly, and had not malice prepense, and struck, with the others, him that is dead, whether this be murder or manslaughter in John Vane Salisbury."

To this the court answered: "if John Vane Salisbury had not malice prepense, but suddenly took part with them who had malice prepense, this is manslaughter in him, and not murder, because he had not malice prepense."

Accordingly, the jury found Salisbury guilty only of manslaughter, and his codefendants guilty of murder. This case is given as authority for the proposition ruled, in Russell, Law of Crimes (7th English Edition) vol. 1, p. 115.

So, applying this rule to the proof in the case at bar, we think the jury should have been instructed that if Herman Presley came to the scene of the assault without knowledge of any purpose on the part of his brother to assault his wife, or to commit any other act of unlawful violence, so that they were not engaged in a common unlawful enterprise, and if the assistance given by Herman Presley was without deliberation and premeditation, then he would not be guilty of the same degree of felonious assault as his brother, but of an assault with

intent to commit murder in the second degree or manslaughter, according to whether his participation was with malice or induced by sudden passion, upon adequate provocation. And if the jury had believed. that Herman Presley did not know that his brother was using a knife, or other deadly weapon, but thought that he was striking with his fist, and was thus committing a simple assault, it seems to us that he might have been guilty only of a simple assault. This also was a question of' fact which the jury should have been instructed to consider and determine.

The judgment of the trial court against J. D. Presley will be affirmed. The judgment against Herman Presley will be reversed and a new trial awarded as to him.