PEEK, P. J.
 

 Defendant and appellant, Carroll Edward Butler, and his wife, Dorothy, were jointly charged by an indictment with the crime of murder of her 4-year-old daughter. Mrs. Butler entered a plea of guilty to a violation of Penal Code section 192, subdivision 2 (involuntary manslaughter), and was sentenced to prison for the term prescribed by law. The trial of appellant then proceeded before the court, sitting without a jury; he was found guilty of murder of the first degree. He now appeals from the judgment which was thereafter entered and the order denying his motion for a new trial.
 

 At the time Mrs. Butler married appellant she was the mother of Amanda Gayle, the 4-year-old victim. Subsequently, appellant and his wife moved to California, leaving Amanda with Mrs. Butler’s parents in Arkansas. Later, Mrs. Butler brought the child to their home in Portola, where appellant was employed as a logger.
 

 Sometime prior to the fatal beating of the child, appellant had suffered an accident, and as a result his movements were restricted by a body cast which extended from his head to slightly below his waist. However, he did have free movement of his arms. He was taking drugs for relief from the continuing pain and did so on January 6 and 7, 1961.
 

 Appellant does not challenge the sufficiency of the evidence to support the conclusion that the child’s death was the result of the inhuman treatment she received, Thus, it becomes
 
 *439
 
 unnecessary to summarize in detail the unmerciful beatings and whippings inflicted on the child with leather belts, leather boot thongs, and finally with a bullwhip on the two days immediately preceding her death. It is sufficient merely to note these uncontradicted facts, the additional evidence that clumps of her hair had been yanked out by the roots, and the testimony of neighbors that they had observed bruises on the child for several months prior to her death.
 

 Doctor Bross, who saw the child immediately after death, testified that 70 to 80 per cent of her body was covered with bruises and that there were hundreds of lacerations; that most of the bruises had been inflicted within two or three days preceding death, although some were much older; that the injuries were produced by heavy and repeated blows; and that a bullwhip could have caused the injuries. He and Doctor Salvadorini testified that death was the combined result of hemorrhages in the skin and tissues, lacerations and contusions of the body, multiple pulmonary emboli, and shock due to trauma.
 

 Appellant’s primary contention is that there was no evidence that he intended to cause the child’s death; that he is of borderline intelligence; that there was no evidence of hatred towards the child; that on the contrary, he loved her; and that while under the influence of Pereodan (a mild proprietary narcotic)
 
 he
 
 whipped
 
 the
 
 child.
 

 Although Penal Code section 22 specifically refers to voluntary intoxication, it has been interpreted to include intoxication by drugs as well as by intoxicating liquors.
 
 (People
 
 v.
 
 Baker,
 
 42 Cal.2d 550 [268 P.2d 705];
 
 People
 
 v.
 
 Lim Dum Dong,
 
 26 Cal.App.2d 135 [78 P.2d 1026].) It has further been held that:
 

 “. . . whenever the existence of any particular purpose, motive or intent is a necessary element to constitute any particular species or degree of crime, the trier of facts in determining whether such purpose, motive or intent actuated the accused in the perpetration of the offense, may properly take into consideration the fact that he was intoxicated at the time. [Citations.] However, the weight to be accorded to evidence of intoxication, and whether such intoxication precluded the accused from forming a specific intention to kill and murder, which intent is a necessary elemént in murder of the first degree, are matters essentially for the determination of the trier of the facts.”
 
 (People
 
 v.
 
 Murphy,
 
 1 Cal.2d 37, 40 [32 P.2d 635].)
 

 
 *440
 
 Here, the record shows that on Friday and Saturday appellant had voluntarily .taken an overdose of Percodan to ease his pain, and that on Friday he appeared drowsy. But, there was also evidence that when he was arrested on Sunday morning at 3 -.30 a. m., shortly after the death of the child, he appeared rational and calm. He was able to recall and testify concerning events occurring on Friday and had little or no trouble recalling events occurring on Saturday. Under such circumstances, it cannot be said that he was so mentally disordered that his judgment was totally impaired.
 

 Appellant’s further argument is based primarily upon the testimony of psychiatrists. It is true that one of the doctors, whose opinion was based on the facts contained in the grand jury report, was of the opinion that on January 6 and 7 the appellant did not have the mental capacity to premeditate and to form the intent to cause suffering, and that the pills he had taken would accentuate an incipient mental or emotional disorder, further impairing a person’s capacity to form an intent. A second psychiatrist, who personally examined appellant, reached a somewhat similar conclusion, that appellant had no appreciation for the harm he was causing the child; that he was not motivated by revenge or sadistic impulses; that he did not intend to kill the child; and that he did not intend to cause her pain or suffering.
 

 A third psychiatrist, however, after listening to appellant in court, disagreed completely with the views of the other two. It was his opinion that on the two dates appellant had the capacity to form the intent to torture; that his opinion was supported by the report of a fourth doctor who had performed a neurological examination of the appellant, including an electroencephalogram, and who had concluded that the appellant was mentally competent; that there was no brain damage; and that nothing suggested any particular neurotic or psychotic pattern.
 

 When a homicide is perpetrated by means of torture the means used are conclusive evidence of malice and premeditation and the crime is murder of the first degree.
 
 (People
 
 v.
 
 Misquez,
 
 152 Cal.App.2d 471 [313 P.2d 206].) Where defendant’s intent was to inflict cruel suffering for the purpose of revenge, extortion, persuasion, or to satisfy some untoward propensity, it is likewise murder by torture, and hence, first degree.
 
 (People
 
 v.
 
 Tubby,
 
 34 Cal.2d 72 [207 P.2d 51];
 
 People
 
 v.
 
 Misquez, supra.)
 
 Suffering alone is not sufficient to establish murder by torture; there must be an intent
 
 *441
 
 that the deceased shall suffer. Nevertheless such intent may be inferred from the condition of the decedent’s body and the admission of the defendant.
 
 (People
 
 v.
 
 Turville,
 
 51 Cal.2d 620 [335 P.2d 678];
 
 People
 
 v.
 
 Misquez, supra.)
 

 Here, as in the
 
 Misquez
 
 case, “The brutal and revolting manner in which defendant mistreated the child leads inevitably to the conclusion that he intended to cause cruel pain and suffering.”
 
 (People
 
 v.
 
 Misquez, supra,
 
 152 Cal.App.2d at p. 480; see also
 
 People
 
 v.
 
 Murphy,
 
 1 Cal.2d 37 [32 P.2d 635].) It therefore follows defendant was guilty of the crime as charged.
 

 The judgment and order are affirmed.
 

 Schottky, J., and Pierce, J., concurred.