# WILLARD REX TOOLEY, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

Court of Criminal Appeals of Tennessee. Sept. 8, 1969.

Certiorari Denied by Supreme Court Dec. 15, 1969.

Robert A. Tillman, Walker Gwinn and Hugh W. Stanton, Jr., Memphis, for plaintiff in error.

George F. McCanless, Atty. Gen., Robert H. Roberts, Asst. Atty. Gen., Nashville, Robert K. Dwyer and Leonard T. Lafferty, Asst. Dist. Atty. Gen., Memphis, for defendant in error.

## OPINION

WALKER, Presiding Judge.

The defendant below, Willard Rex Tooley, appeals from his conviction of murder in the first degree in the Criminal Court of Shelby County and sentenced to 99 years in the penitentiary.

On the night of October 25, 1967, the defendant, 31 years of age, visited the V.I.P. Lounge, a bar in the Frayser area of North Memphis, where he met the deceased, Mrs. Edna Earl Scallions, aged 50. They drank beer there and at Ray's Lounge until a short time after midnight. He was not drunk, but he says he had a headache and she gave him a capsule to relieve it.

They left Ray's Lounge together and drove to a remote area near the Mississippi River. A farmer in this section identified the unusual sound of the defendant's automobile as it passed his house.

The following morning Mrs. Scallions was found barely alive in this isolated area. She was lying on the ground and was nude except for her slacks around her ankles. She had been struck on the back of her head and her forehead, the laceration on her forehead being deep enough to expose the skull. In addition she had

been mutilated almost beyond description. A nipple was missing. Her vagina and rectum were severely cut and two large rocks had been inserted into her abdominal cavity through her vagina. Some of her intestines had been thrown on the ground. Although she was still alive when found at about 7:00 A.M., she died an hour later without regaining consciousness.

At about 3:00 A.M. on this same day (October 26, 1967), the defendant drove his automobile into a Texaco Service Station and had his car filled with gasoline, for which he paid with a credit card. It needed only three gallons, amounting to one dollar. He had blood on his hands and face. The attendant also noticed blood on his jacket lying on his car seat. He went into the rest room and washed off the blood. He left blood on the towel he used there. His credit card led to his identification as the perpetrator of the crime. He was a sergeant in the Marine Corps, on temporary duty at the Naval Air Station at Millington. From the Texaco station, he returned to the town of Millington, where he ate a good breakfast and went to sleep in his barracks. Later that day he went to his home in Missouri to visit his wife and children. On his return, as he crossed the Memphis and Arkansas bridge on October 30, 1967, he was arrested.

The defendant testified in his own behalf. He admitted being with the deceased on the night of the killing, but said that he "blacked out" as he was leaving the last of the night clubs with her and did not remember anything until he awoke later in his automobile with a headache and sticky hands and face. He says he thought he had vomited on himself until he washed his hands in the rest room and found the water was red.

After his classes on that morning, he was concerned by a news report about the deceased. He had found blood on his clothing and in his car. He drove his car through a wash, vacuumed it and undertook to wash blood stains from a seat. Following this he drove to Missouri to see his family.

The defendant was examined at Central State Hospital and found sane.

The defendant assigns as error the search of his car in the police lot without a search warrant and the introduction of the rug or carpet into evidence.

After arresting the defendant without a warrant, at about 12:30 A.M., October 30, 1967, the officers took his automobile to the police storage garage. At approximately 10:00 A.M. that day, Mrs. Joyce Matthews, a technician from the University of Tennessee Department of Pathology, on the direction of police officers, without a warrant, searched the car to find evidence of the murder. She testified over the defendant's objection to the presence of blood on a rug and a piece of paper inside the car. The defendant was in jail when the search was made. The defendant says this was an unreasonable search. In support of his contention that this evidence was illegally obtained, he cites Ellis v. State, 211 Tenn. 321, 364 S.W.2d 925.

In Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, the Court said:

"* * * Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest."

See also Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968).

The rule enunciated in these cases prohibited the search of the defendant's automobile at the police station and the seizure of the rug and paper found there. Although the evidence was illegally seized, the defendant testified at the trial and both on direct examination and cross-examination said that blood was on the seat, carpet and door of his automobile and on his clothes there as well as on his person. His testimony is essentially the same as that of the technician as to blood in the car.

■ ■  A defendant may make illegally seized evidence admissible by his testimony on direct examination. Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503. See Lester v. State, 216 Tenn. 615, 393 S.W.2d 288; Burks v. State, 194 Tenn. 675, 254 S.W.2d 970; Batchelor v. State, 213 Tenn. 649, 378 S.W.2d 751; 29 Am.Jur.2d Evidence, Sec. 416. He has done this and is now precluded from questioning the search.

Moreover, this evidence was merely cumulative and added little to the State's case. It did not result in prejudice. See State v. Wood, 197 Kan. 241, 416 P.2d 729 (1966); State v. Sorenson, 270 Minn. 186, 134 N.W.2d 115 (1965).

The defendant complains that his statements on arrest and at the police station were inadmissible under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694, 10 A.L.R.3d 974.

He was arrested without a warrant and was thoroughly advised of his constitutional rights by two officers sep-

arately. He says they did not tell him the offense for which he was charged. Captain R. L. Williams testified that he told the defendant he wanted to talk to him about a woman that had been killed in Memphis. He was arrested on probable cause of the commission of a felony. The trial judge found against his contentions and there was no error here.

At the police station, he was again fully advised of his rights and voluntarily answered questions. During the interrogation, he was asked to explain the bloody clothes. The officer asked if he wanted to explain them, and he replied that he did not. In a hearing out of the presence of the jury, the trial judge held inadmissible any questions and answers about the clothing. The defendant says that his answer that he did not want to talk about the clothing was prejudicial under O'Brien v. State, 221 Tenn. 346, 426 S.W.2d 507. This reply was not introduced as a tacit admission of guilt, and this assignment is without merit. See State v. Flanagan, 443 S.W. 2d 25, opinion by our Supreme Court released for publication June 13, 1969.

Following his remark about the clothes, the defendant says any further interrogation was inadmissible. He continued answering questions without any objection or indication that he did not want to talk. We think his statements were admissible under *Miranda*.

On cross-examination, the assistant attorney general was permitted to ask the defendant if he had raped a woman in Okinawa. He denied it, and the prosecutor stopped questioning him on that subject. Later the defendant brought it up and voluntarily explained an

incident in Okinawa without objection of his counsel. If there was any error here, it was harmless.

■ The defendant objected to the prosecutor's argument to the jury about this incident. The Court promptly sustained the objection and admonished the jury to disregard it. In view of the Court's prompt instruction to the jury, the error was harmless. Williams v. State, 218 Tenn. 359, 403 S.W.2d 319.

■ ■ The defendant says there is no proof of premeditation. The question is whether or not the circumstances here are sufficient to show premeditation. The elements of premeditation and deliberation may be inferred from the circumstances of the killing. Edwards v. State, 221 Tenn. 60, 424 S.W.2d 783. If the design to slay was premeditated, it is not material that the defendant was in a passion or excited when that design was executed. Presley v. State, 161 Tenn. 310, 30 S.W.2d 231.

■ ■ Although the defendant did not know the deceased until the night of the slaying, the circumstances show deliberation and premeditation at the time this atrocious crime was committed. Many cuts and wounds were found over the victim's body, and it was horribly mutilated. The perpetration of the crime took from several minutes to an hour and shows an intent to kill formed after a pre-existing reflection and not formed as a result of mere unconsidered action or sudden impulse, hastily executed. The design may be conceived and deliberately formed in an instant. Lewis v. State, 40 Tenn. 127; Galvin v. State, 46 Tenn. 283.

The defendant gave a conflicting story about where he

had last seen the deceased. He told the officers that he had let her out of his automobile in front of the bar where he had met her.

Although the evidence is circumstantial in character, it is legally sufficient to support a conviction of first degree murder.

In Breeding v. State of Maryland, 220 Md. 193, 151 A.2d 743 (1959), the Court of Appeals of Maryland considered a case in which the deceased was killed by manual strangulation after a severe beating and struggle and her body left in a remote section near the place the defendant had parked his car. The defendant in that case testified that he only recalled dancing with a woman at a beer tavern and denied seeing the victim. The court there found on evidence similar to the case before us that the triers of fact could properly draw the inference, from all the circumstances of the case, that the victim met death at his hands and that the killing was premeditated. The jury was not obliged to accept his story.

The defendant next contends that the trial judge erred in instructing the jury, at the request of the State:

### "State's Special Request No. I

The Court further charges you that the elements of premeditation and deliberation may be inferred from the circumstances of the killing.

### "State's Special Request No. II

The Court further charges you that any unseemly conduct toward the corpse of the person slain, or any indignity offered it by the slayer, and also concealment

of the body, are evidence of expressed malice, and of premeditation and deliberation in the slaying, depending, of course, upon the particular circumstances of the case."

The first request is a correct statement of the law. See Edwards v. State, supra. Premeditation, being the distinguishing feature of first degree murder, is a process of the mind, and is frequently incapable of direct proof and hence must often be inferred from all the circumstances surrounding the homicide.

The second request is taken from Mullendore v. State, 183 Tenn. 53, 191 S.W.2d 149, in which our Supreme Court quotes from the Supreme Court of North Carolina in affirming a first degree murder conviction. The instructions, read and construed as a whole, fully and correctly state the law; and there was no prejudice to the defendant by this part of the charge. See Ervin v. State, 196 Tenn. 459, 268 S.W.2d 351; Edwards v. State, 202 Tenn. 393, 304 S.W.2d 500.

All assignments have been considered and they are overruled.

The judgment of the lower court is affirmed.

This case was heard and submitted to the Court prior to the enactment of Chapter 330 of the Public Acts of 1969 increasing the membership of the Court.

OLIVER, Judge (concurring).

Further supporting the conclusion that the requisite deliberation and premeditation may be and are here demonstrable from the manner by which the killing was

committed—the atrocity, cruelty and malignity evidenced by the circumstances of its execution, and that the jury was warranted in finding premeditation in this case, are the following: 3 Warren on Homicide, § 273a, pp. 167-168; Dowell v. State, 191 Ark. 311, 86 S.W.2d 23; People v. Furlong, 187 N.Y. 198, 79 N.E. 978; State v. McNamara, 116 N.J.L. 497, 184 A. 797, 185 A. 479, cert. den. 299 U.S. 568, 57 S.Ct. 32, 81 L.Ed. 419; State v. Page, Mo., 130 S.W.2d 520; Commonwealth v. Bartolini, 299 Mass. 503, 13 N.E.2d 382, cert. den. 304 U.S. 565, 58 S.Ct. 950, 82 L.Ed. 1531; State v. Faust, 254 N.C. 101, 118 S.E.2d 769, 96 A.L.R.2d 1422, cert. den. 368 U.S. 851, 82 S.Ct. 85, 7 L.Ed.2d 49; People v. Butler, 205 Cal.App.2d 437, 23 Cal.Rptr. 118.

GALBREATH, Judge (dissenting).

I must dissent from the majority opinion because there is no proof of the premeditation necessary to raise the murder described in the record from second degree to first.

The fact that a killing takes place raises a presumption in law of second degree murder. There can be no presumption of first degree murder, every element of which must be proved beyond a reasonable doubt.

"* * * from the mere fact of killing, without more, the law presumes only murder in the second degree." Witt v. State, 46 Tenn. 5.

There is not an iota of proof in this record as to the circumstances surrounding the killing. There were no witnesses who survived other than the defendant and he testified he did not recall the killing.

From the gruesome manner of the killing there can be little doubt but that it was accomplished in an irrational passionate fury that characterizes a paranoiac frenzy. Of course, this may not be so; the defendant could have cleverly mutilated his victim in an effort to convince the authorities later that he was not acting with that degree of rationality necessary to convict for first degree murder. But we cannot so speculate. We can presume nothing against innocence. See Liming v. State, 220 Tenn. 371, 417 S.W.2d 769. If we are to engage in presumption, it must be towards innocence, not guilt. If we could presume, in the absence of any proof, that the defendant deliberately and coolly attacked his victim with the previously conceived purpose of mutilating her to the horrible extent involved here, we could just as easily presume that the victim herself was the aggressor and that she was killed by the defendant while warding off her attack. The law allows neither of these speculations, although, as aforesaid, it does allow a presumption of murder in the second degree.

True, this was a savage and brutal murder. Second degree murder is more often characterized by brutality than is first degree. A jealous lover may in a fit of rage blow his unfaithful mate's head from her body with a shotgun and fire the weapon into her lifeless body repeatedly until all the shells are expended. Would this be as serious a crime as the stealthy poisoning of an infant child by its father to collect the proceeds of an insurance policy on its life? The law says not and reserves its highest degree of punishment, not for the drunken monster who rips and mutilates his helpless victim attacked without reason or motive, but for the sly, deliberate killer

who slays from ambush after careful planning both the crime and his escape from detection.

The defendant in this case could not have been more irrational in his activities immediately after the crime. He practically assured his arrest and conviction by going into the Texaco Service Station for the purchase of gasoline he did not need while reeking with the blood of his victim and incredibly paying for the purchase with his credit card. True, we may look to the surrounding circumstances of a murder to determine whether or not premeditation existed, but is this not the plainest kind of circumstantial evidence that this killer did not have enough coolness of purpose right after the murder to take the simplest precautions against detection? This is the only circumstantial evidence in the case that bears on the question of premeditation and it completely refutes it. The only other significant thing in the record as to his activities prior to his realization the next day that he may have killed the victim is that he ate a hearty breakfast and went to sleep. This is a typical reaction of a paranoid after the release of tension that follows the berserk type of behavior causing the victim's death. This is in no wise to intimate that the defendant was insane to the point of not knowing the difference between right and wrong but strongly mitigates against the coolness of purpose and design that must be present in all first degree murder cases not involving the commission or attempts to perpetrate the crimes enumerated in T.C.A. § 39-2402.

Was this murder committed in hot blood or cool? Black defines "cool blood" as:

"Calmness or tranquility; the undisturbed possession of one's faculties and reason; the absence of violent passion, fury, or uncontrollable excitement."

Can there be any presumption that the defendant in this case was acting in such a manner as described in this definition? In my considered opinion, no.

Judge Oliver in his concurring opinion seems to equate brutality, or atrocity, cruelty and malignity with premeditation. As pointed out above, the cruelest murders are those that fall into the category of second degree. Homicides committed in hot blood without premeditation are not infrequently more brutal and ghastly in their physical manifestations than those which have been planned. A corpse that has been mutilated almost beyond recognition with a broad ax is much more horrible to the vision than is the body of a little baby that has been smothered with a pillow, but the ax is frequently the murder weapon of one in a fit of uncontrollable anger, whereas a pillow is usually not.

Further, not one of the seven cases cited by Judge Oliver is helpful in deciding this case because in each of them facts were proved which established premeditation. I summarize and distinguish:

1. In Dowell v. State, the victims were thrown into a creek in an effort to conceal the crime and not discovered for a month. It is suggested that if decomposition had progressed much further, the bodies could not have been identified. Such activity after a crime does suggest deliberation and calculated action. (The defendant made no effort to conceal the victim. On the contrary, he left her living.)

2. In People v. Furlong, robbery was proved and thus proof of premeditation was not needed. (There is no proof of robbery or any other of the defined felonies in this case.)

3. State v. McNamara was a gangster killing by one bank robber of his confederate. The motive was obvious from the proof, to steal the deceased's share of the rather large proceeds of the crime. Robbery, of course, negates proof of premeditation. (No attempt to commit any other felony by the defendant here was proved.)

4. In State v. Page, enmity and ill will, coupled with robbery of the victim, was proved. (No enmity or robbery element in this case.)

5. In Commonwealth v. Bartolini, the defendant had assaulted the deceased twice within about a month before the murder. This permitted an inference that this disposition to attack the deceased continued until the date of the killing. (There was no prior attacks on the victim by the defendant in this case.)

6. In State v. Faust, a civil rights riot was raging and the defendant announced "kill that son of a bitch" prior to joining in the assault by a mob against two officers. The court held that this constituted a previous threat against the deceased by the defendant. (There was no proof of any ill will on the part of the defendant here.)

7. In People v. Butler, the murderer had severely beaten and tortured a child over a prolonged period and had made many previous attacks on her. (There is nothing even suggesting prior attacks in the instant case.)

The brutality of a killing cannot by itself support a finding that the killer acted with premeditation. Therefore, if the evidence shows no more than the infliction of multiple acts of violence on the victim, it would not be sufficient to show that the killing was the result of careful thought and weighing of considerations. See People v. Anderson, (Supreme Court of California), 73 Cal.Rptr. 550, 447 P.2d 942.

There is simply no proof at all as to premeditation in this record. None. Not a scintilla. For this reason I would modify the verdict by reduction to second degree murder if acceptable to the State; otherwise, I would reverse and remand for a new trial.