Charles HICKS, Jr., Plaintiff-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

Sept. 30, 1975.

Certiorari Denied by Supreme Court
Dec. 15, 1975.

Dale M. Quillen, Nashville, for plaintiff in error.

R. A. Ashley, Jr., Atty. Gen., R. Jackson Rose, Asst. Atty. Gen., Nashville, W. B. Lockert, Jr., Dist. Atty. Gen., Ashland City, J. Kenneth Atkins, Asst. Dist. Atty. Gen., Erin, for defendant in error.

DUNCAN, Judge.

## OPINION

The plaintiff in error, Charles Hicks, Jr., hereinafter referred to as the defendant, brings this appeal contesting his conviction for murder in the first degree and resulting penitentiary sentence of twenty (20) years and one (1) day.

■ In his first assignment, the defendant contends that the court erred in failing to instruct the jury on voluntary intoxication as it pertains to the elements of premeditation and deliberation involved in murder in the first degree.

After a careful review of the record we do not find error in this regard. There was no evidence presented at the trial to raise the issue of voluntary intoxication. While there was some testimony that the defendant and his associates had participated in some drinking during the day of the homicide, it was not insisted by the defendant at the trial that he was intoxicated at the time of the incident.

The defendant testified that "quite a bit" of drinking had taken place. He stated that whiskey was there in the office and everybody was helping themselves to it. Additionally, he testified that he had had "something to drink."

Cecil Breeden and Howard Largent, witnesses for the state, testified that during the hours preceding the homicide, the men at the office, including the defendant, had been drinking. The witness Largent testified that "nobody," including the defendant, was "drunk."

■ The fact that voluntary drunkenness was not being interposed as a defense in this case is graphically illustrated by the fact that the defendant's counsel did not make any special request to the court for instructions on this issue. An accused is entitled to an affirmative instruction upon every issue raised by the evidence, but there is no requirement on the part of the court to instruct on matters not raised by the evidence. *Simpson v. State,* 1 Tenn.Cr. App. 256, 437 S.W.2d 538 (1968); *Lester v. State,* 212 Tenn. 338, 370 S.W.2d 405 (1963).

Nowhere in his testimony did the defendant take the position that he was intoxicated at the time of the killing involved herein, nor that any of his actions were motivated or influenced by his intake of intoxicants. Rather, his position was that he did not fire the fatal shot that killed the deceased. He testified in vivid and minute detail as to his version of the events that took place on this occasion. The mere fact that there was some evidence that the defendant had been

drinking, without more, is not sufficient to raise the issue of voluntary intoxication. We conclude that the issue of voluntary intoxication was not raised by the proof, and therefore there was no duty on the part of the court to charge the jury on this question.

■ In his second assignment, the defendant alleges that the court erred in admitting expert testimony on powder burns, and in his third assignment the defendant complains that the court failed to instruct the jury regarding the weight to be given to expert testimony.

■ Neither of these grounds were presented to the trial court in the defendant's motion for a new trial, and the defendant is thus precluded from raising these questions on this appeal. The law of this state is that, absent any patently invalidating error, the trial judge will not be put in error upon matters not brought to his attention for correction in the motion for a new trial, and assignments of error which were not incorporated in the new trial motion will not be considered on appeal. *Jenkins v. State,* Tenn.Cr.App., 509 S.W.2d 240 (1974); *Pulley v. State,* Tenn.Cr. App., 506 S.W.2d 164 (1973); *Hancock v. State,* 1 Tenn.Cr.App. 116, 430 S.W.2d 892 (1968); Rule 14(4) and (5) of the Tennessee Supreme Court Rules, adopted by this Court.

■ Further, as to the complaint regarding the failure of the trial court to charge on the weight to be given expert testimony, we add that no special request for such instruction was tendered to the court, and no objection to the charge was made at the trial. For these reasons, together with the fact that this complaint was not made in the motion for a new trial, as stated, the defendant is now precluded from raising the question here for the first time. *Hancock v. State, supra.*

■ With regard to the admission of the expert testimony, it should be noted that the admission of such is within the discretion of the trial judge. *Arterburn v. State,* 216 Tenn. 240, 391 S.W.2d 648 (1965). We find no abuse of discretion here. We think the testimony was properly admitted.

For the reasons stated, the second and third assignments of error are overruled.

In his last assignment, the defendant contends that there was not sufficient evidence to sustain the verdict.

The proof, as accredited by the jury, showed that on December 21, 1973, the defendant, a shop foreman for the County Highway Department, was at the shop with some fellow workers. However, due to bad weather, the men were not working that day. During the day, the men drank some whiskey. Hicks had a .22 caliber pistol earlier in the afternoon or evening, which he claimed disappeared, and he had a dispute with some of the men over that incident. He called his ex-wife, Elsie (Lee) Hicks, and had her deliver to him a shotgun and a .38 caliber pistol. Hicks loaded the pistol and threatened two of the men, Cecil Breeden and Howard Largent. Around 8:00 p. m. the defendant called his girl friend, Margaret Welker, the victim herein, and a few minutes later she came to the shop in her car. As she stepped through the office door, the defendant shot her with a .38 caliber revolver, the bullet entering her neck and exiting from her back on the left side.

Included in the state's proof was the testimony of Cecil Breeden, previously mentioned, who stated that he saw the defendant shoot the victim in the neck. Breeden testified that after the shooting, Hicks told Howard Lagent to destroy the gun, and told Breeden to call the Sheriff.

Howard Largent testified that he was around the shop most of the day and that the men, including the defendant, were drinking some but that he never saw "nobody drunk"; that the defendant was not drunk; that he overheard the defendant call someone about bringing some more guns and shells over to him; that the de-

fendant's "wife," Elsie (Lee) Hicks, (the witness is obviously referring to the defendant's ex-wife) brought a shotgun and pistol; that she handed the defendant the pistol, and when asked what the defendant did with the pistol, the witness said:

"Q Then what did he do with this pistol at that time?

A He took the pistol and loaded it, and she said don't point that gun at me, she said, that gun's dangerous and she left right about then, she left, and he kept on rolling it around and loading it and pointing it at me and Breeden in that little office there.

Q Did he threaten you all with it at that time?

A He just said something about one of you alls got my gun, and he kept getting more and more riled up about it, and I told him he had to put that gun up or do something with it, and he put it up, anyway he got it out of sight, I don't know what he done with it but he got it out of sight."

Largent further testified that the defendant telephoned the victim, Mrs. Welker, and told her to come over; that she did and then the witness described the events as follows:

"Well, he went out there and raised the door up and let her in in the shop and when she drove in he let the door down while she got out and come in the office and when he come in the office to the desk he just walked around turned around, I don't know where he got the gun, but he just had it pointed up, up, he just had it up there, and shot it, just as she entered the door."

Further, when asked what happened after the shot was fired, the witness testified:

"She just fell and he went out to get her, I went out there, he kinda picked her up and laid the gun down there and raised her up and he said you take this gun to Lee, tell her that I shot her, and I left with the gun right then, he gave it to me voluntarily, he gave me the gun."

Largent stated that he did take the pistol to the ex-wife, but that when she did not take the gun, he threw it under a lumber pile.

Dr. Franklin B. Sledd testified that he performed an autopsy on the body, and that the victim's death was caused by the gun shot wound.

Robert Fortner, TBI Agent, testified as an expert in firearms identification and stated that he test-fired the murder weapon into a piece of paper from different distances. The witness stated that the results of one of the test firings at a distance of five (5) inches matched the pattern of powder burns found on the victim's blouse.

The defendant testified and denied he shot the deceased. Instead, he claimed that the shot came from behind him. He stated that the victim was his girl friend, and admitted that he had called his ex-wife and requested her to bring the guns over to the shop. He said he wanted the pistol to carry for protection, as he and the victim were going to visit at a nearby town, and he wanted the shotgun for the purpose of going hunting the next morning.

The defendant's version of the events, at the time of the shooting, was as follows:

"Well, she drove up and blowed the horn and I said some of you all let her in, I said that's Margaret, and, well, about the time I said that the headlights just come right on me, the door must have already been up, so she just drove right on in and got out of the car and come right out around the back of the car and she was coming in kind of a little jiggedy trot and just about the time she entered the door well I just hung the phone up and just caught hold of the corner of the desk and just rolled the chair right up to the edge of the desk and reached up to catch her like that and just well I almost caught her by the hip when the gun went off and I didn't think about her being shot, I thought maybe one of them had maybe knocked the gun off and it went off, they

had been shooting firecrackers around there and I thought maybe a firecracker went off there, I really didn't know just right then."

It is noted that, contrary to the defendant's statements above set forth, other proof was in the record that he had opened the garage door for the victim, prior to her entrance into the shop office.

The defendant admitted that he might have told the officers right after the shooting that the gun was not in the shop and that he never took the guns out of the car, explaining that he was "upset" and "didn't know half the time what" he "was talking about."

Further, the defendant testified that the deceased had telephoned him at 1:00 p. m. on that day, and that they discussed plans about them going on a trip that night. The defendant said the victim was at home when she called him. The victim's daughter testified that at 1:00 p. m. on that day the victim was not at home, but to the contrary, the victim and the witness were in Clarksville at that time.

■ In considering and passing on assignments of error challenging the sufficiency of the evidence to warrant and sustain the verdict of the jury in criminal cases, we are bound by the law that a guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the state and resolves all conflicts in favor of the theory of the state. Such a verdict removes the presumption of the innocence of the accused which stands as a witness for him until he is convicted, and raises a presumption of his guilt upon appeal, and he has the burden upon appeal of showing that the evidence preponderates against the verdict and in favor of his innocence. *Gulley v. State,* 219 Tenn. 114, 407 S.W.2d 186 (1966); *Jamison v. State,* 220 Tenn. 280, 416 S.W.2d 768 (1967); *Chadwick v. State,* 1 Tenn.Cr.App. 72, 429 S.W.2d 135 (1968).

■ From our review of the record, we conclude that the evidence is more than sufficient to support the verdict. The evidence conclusively shows that the defendant fired the shot that killed the deceased. The state presented two eyewitnesses who testified that the defendant fired the fatal shot. The defendant relayed a message to his ex-wife that he had shot the deceased, and the jury was entitled to draw its own conclusions as to the defendant's purpose and motive in this regard. Further, he attempted to dispose of the murder weapon, from which action the jury was entitled to draw an inference of guilt. Any attempt to suppress or destroy or conceal evidence is relevant as a circumstance from which guilt of an accused so acting may be inferred. *Sotka v. State,* Tenn.Cr.App., 503 S.W.2d 212 (1972).

There was no proof in the record to show that the defendant was laboring under any heat of passion or that the deceased did anything to provoke the defendant. The evidence is strong that the defendant had the guns delivered to him at the garage and arranged for the deceased to come there for the sole purpose of killing her, thus establishing premeditation.

■ As was stated in *McGill v. State,* 4 Tenn.Cr.App. 710, 720–21, 475 S.W.2d 223, 227 (1971):

"To support a verdict finding an accused guilty of first degree murder there must, therefore, be an evidentiary basis for a conclusion that the killing was willful, malicious, premeditated and deliberate, unless it was accomplished by poison or by lying in wait or in the perpetration of or attempt to perpetrate one of the felonies named in the defining statute (T.C.A. sec. 39–2402), . . .

. . . . .

"Whether premeditation is present in a given case is a question of fact to be determined by the jury from all the circumstances in evidence. *Clarke v. State,* [218 Tenn. 259, 402 S.W.2d 863] supra. The elements of premeditation and delib-

eration may be inferred from the circumstances of the killing. *Edwards v. State,* 221 Tenn. 60, 424 S.W.2d 783 (1968); *Tooley v. State,* 1 Tenn.Crim.App. 652, 448 S.W.2d 683 (1969)."

Under the facts of this case, the jury was well warranted in finding that the defendant killed the deceased and that such killing was willful, malicious, premeditated and deliberate.

The evidence does not preponderate against the verdict and the assignment complaining of the insufficiency of the evidence is overruled.

We find no reversible errors in this record and thus, we affirm the defendant's conviction for murder in the first degree.

WALKER and RUSSELL, JJ., concur.