STATE of Tennessee, Appellee,

v.

Lucius ALLEN, Jr., Appellant.

Court of Criminal Appeals of Tennessee, at Jackson.

March 4, 1982.

Permission to Appeal Denied by Supreme Court June 1, 1982.

William M. Leech, Jr., Atty. Gen., Gordon W. Smith, Asst. Atty. Gen., Nashville, James C. Beasley, Jr., Asst. Dist. Atty. Gen., Memphis, for appellee.

John Donald, Asst. Public Defender (trial), Joe B. Jones, Asst. Public Defender (appeal), Memphis, for appellant.

## OPINION

WALKER, Presiding Judge.

The appellant, Lucius Allen, Jr., was convicted of assault with intent to commit first degree murder where bodily injury to the victim occurred and was sentenced to 36 years' imprisonment with an additional five years consecutive for the use of a firearm in the commission of a felony.

We find no reversible error and affirm the conviction.

On appeal, appellant first argues that the evidence is insufficient to sustain a conviction for assault with the intent to commit first degree murder because the state failed to prove malice aforethought, an essential element of the offense. He insists that the offense of assault with intent to commit voluntary manslaughter is the most of which he is guilty.

The state's proof, accredited by the jury, shows that in the early evening of November 23, 1980, appellant, along with Lashawn Sanford, and one of appellant's daughters, arrived at the house where appellant's wife, Almyra Allen, and their children resided. Appellant and his wife were separated and in the process of obtaining a divorce. Almyra Allen, who was visiting her mother, made a telephone call to her residence, talked to the appellant, and told him to leave. Subsequently, Almyra came home where she found the appellant. She again asked him to go away. Two of their daughters and Leshawn Sanford took appellant's car to go to the movies. The couple's other two children remained at their home.

Almyra Allen prepared some supper for herself and went to her bedroom to eat. Appellant came in that room and asked for his .25 caliber automatic pistol, which he obtained and put into his trousers. Almyra Allen and the other two children were later preparing to leave their home. He had been enjoined from coming there. Since the appellant still would not leave, Almyra attempted to call the police, but appellant pushed down the receiver buttons on the telephone. She told her children to go next door and call the police.

Appellant ushered the children out the door to the carport and locked the door. Almyra began to walk down a hallway toward her bedroom when appellant shot her once in the back. She fell to the floor and appellant stood beside her. As she begged for mercy and held to his legs, appellant fired twice more at Almyra, with one bullet striking her cheek and coming out her right eye, leaving her permanently blinded in that eye. The last bullet scraped the top of her head.

With Almyra hanging on to his legs, appellant dragged her to the children's bedroom where he placed the pistol under the mattress of a bed.

Almyra Allen testified that she had smelled alcohol on appellant's breath on the day of the crime. Investigating police officers testified that, although appellant may have been drinking, he did not appear to be so intoxicated that he did not know what he was doing.

Appellant testified that he comforted his wife and called an ambulance after the shooting. He remained in the house until taken away by police. Almyra Allen testified that appellant simply told her to not go to sleep. Almyra further testified that before the second and third shots, appellant said to her, "I told you I was going to kill you."

Appellant gave a statement to the police about two hours after the shooting, in which he admitted shooting his wife. He stated, in part:

"When she first turned and walked off it was after I shot and I didn't think I had hit her. I asked her did she still think I was playing. When she fell, I thought she was faking and I just got mad and I shot again."

Appellant testified that he was highly intoxicated and did not know what he was doing. The testimony of Leshawn Sanford corroborated appellant's testimony that he had been drinking on the day of the crime.

A guilty verdict, approved by the trial judge, accredits the testimony of the witnesses for the state and resolves all conflicts in favor of the theory of the state. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn.1978); *State v. Townsend*, 525 S.W.2d 842, 843 (Tenn.1975). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 836 (Tenn.1978).

■ Appellant contends that the evidence showed that although his acts were voluntary, they were "upon sudden heat" and that he is thus guilty at most of assault with the intent to commit voluntary manslaughter. The appellant's malice can be inferred from his use of a deadly weapon in the assault. *Claiborne v. State*, 555 S.W.2d 414, 416 (Tenn.Cr.App.1977); *Farr v. State*, 506 S.W.2d 811, 814 (Tenn.Cr.App.1974). A finding of premeditation and deliberation was warranted by the evidence that multiple shots from the pistol were fired. *Houston v. State*, 593 S.W.2d 267, 273 (Tenn. 1980). Moreover, the question of whether or not there was adequate provocation to reduce the crime from assault with intent to commit first degree murder to assault with intent to commit voluntary manslaughter is a matter for the jury to determine. *Presley v. State*, 161 Tenn. 310, 30 S.W.2d 231 (1930). In this case the jury determined that there was not such adequate provocation. The appellant's first issue is without merit.

■ In his second issue appellant contends that the enhancement of his assault sentence under T.C.A. 39–4914 was unconstitutional. U.S.Const., Amend. VIII; Tenn.Const., Art. 1, sec. 16. That code section requires that anyone who is found to have employed a firearm during the commission of a felony is to be punished by imprisonment in the state penitentiary for five years, and that this sentence must run consecutive to any other period of confinement.

The statute regarding assault with the intent to commit first degree murder, TCA 39–604, has two distinct provisions. If the assault does not result in bodily injury, punishment is imprisonment in the state penitentiary for not less than five nor more than 25 years. However, if bodily injury to the victim does occur, there must be a determinate sentence for life imprisonment or not less than five years. The jury found appellant guilty under the latter provision. Thus, enhancement, the appellant contends, together with the five-year sentence imposed under 39–4914, amounts to double enhancement of his sentence.

In *State v. Hudson*, 562 S.W.2d 416 (Tenn.1978), the Supreme Court said:

"... T.C.A., sec. 39–4914, is to be applied only with respect to those felonies for which the law does not otherwise provide an *increase in punishment for use of a firearm in committing such felonies.* (emphasis supplied) 562 S.W.2d at 419.

The harsher sentencing required by TCA 39–604(b) in cases where bodily injury to the victim results does not punish the defendant for using a firearm. It adds additional punishment for the results of his crime, regardless of the method he uses.

TCA 39–4914 adds additional punishment for the use of a firearm during a felony, regardless of whether or not bodily injury to the victim is a result. There is no double enhancement of appellant's sentence. This issue is overruled.

Affirmed.

O'BRIEN and TATUM, JJ., concur.