IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 25, 2001

## STATE OF TENNESSEE v. RONALD HAYNES

**Direct Appeal from the Criminal Court for Davidson County**
**No. 98-B-1062     Seth Norman, Judge**

---

**No. M2000-00204-CCA-R3-CD - Filed June 1, 2001**

---

The defendant was indicted by a Davidson County Grand Jury for especially aggravated robbery and attempted first degree murder. Following a two-day jury trial, the defendant was found guilty of especially aggravated robbery, a Class A felony, and attempted second degree murder, a Class B felony. A sentencing hearing was held on September 29, 1999, at the conclusion of which the trial court sentenced the defendant as a Range I offender to twenty-one years at 100% for the especially aggravated robbery conviction and ten years for the attempted second degree murder conviction. The sentences were ordered served concurrently in the Tennessee Department of Correction. In this appeal as of right, the defendant presents three issues for our review: (1) whether the evidence is sufficient to support his convictions for especially aggravated robbery and attempted second degree murder; (2) whether the trial court erred in failing to charge the jury on certain lesser-included offenses; and (3) whether the sentence is excessive. Having reviewed the entire record on appeal, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

William Lane (at trial) and C. LeAnn Smith (on appeal), Nashville, Tennessee, for the appellant, Ronald Haynes.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Pamela S. Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Ronald Haynes, was indicted by a Davidson County Grand Jury for especially aggravated robbery and attempted first degree murder. A jury found him guilty of especially aggravated robbery, a Class A felony, and attempted second degree murder, a Class B felony. After

a sentencing hearing, the trial court sentenced him as a Range I offender to twenty-one years to be served at one hundred percent on the especially aggravated robbery count and to ten years on the attempted second degree murder count. The sentences were ordered served concurrently for an effective sentence of twenty-one years. In this appeal as of right, the defendant presents three issues for our review:

> I. Whether the evidence is sufficient to support convictions for especially aggravated robbery and attempted second degree murder;
>
> II. Whether the trial court erred in failing to charge the jury on certain lesser-included offenses; and
>
> III. Whether the sentence is excessive.

Having reviewed the entire record, we affirm the judgment of the trial court.

## **FACTS**

The evidence presented at trial showed that on December 7, 1997, Justin Davis, a neighbor of the victim, Antonio Grisham, was outside in his front yard feeding his dogs. Davis and the victim lived in the Oakwood area of Nashville. From his front yard, Davis could look up a hill to the house where the victim lived. On this day, Davis could see the victim sitting on the back of a Cadillac that belonged to the victim's cousin. The Cadillac was parked in the driveway close to the mailbox and was sticking out into the road. A car that Davis described as a "reddish hot pink" color with three, young, black males riding in it pulled up and stopped in the middle of the road, right in front of Davis's house. Davis was alarmed enough when he saw the car's occupants "digging around in the car, pointing at the top of the hill, looking at it," to start walking backwards. As Davis explained, "Yeah, if you see somebody digging in their car and you don't know these people, wouldn't you do the same thing, and they're in front of your house?" Davis testified further to the following events:

> A. As soon as I turned around they went up to the top of the hill and they stopped. They got out and started talking to Antonio. The next thing I know, I looked away for a second I heard a pop. And . . .
>
> Q. So you actually saw them up there stopped?
>
> A. Yeah. Yes, ma'am.
>
> Q. And how many people did you see get out of the car?
>
> A. All three of the people that was in the car got out.

Davis identified the "pop" as sounding "like a gun going off" and testified that he had turned away and did not see the car drive off. He started running toward the top of the hill and, when he got to the top of the hill, he saw the victim lying on the ground and "hollering, 'I'm fixing to die.'" The victim was bleeding from his stomach, and the blood was pooling on the ground. Davis noticed that the victim had no shoes on, just pants and a T-shirt. He testified that the victim kept yelling out the name "Popsicle." The victim's cousin, Christopher Grisham, who came out of the victim's house after the shooting, testified that he asked the victim, "What happened to your tennis shoes and who did it?" The victim responded, "Popsicle."

The victim, a sixteen-year-old male at the time of this offense, was transported by ambulance to Vanderbilt Hospital where he underwent surgery and remained for approximately three weeks. While in the hospital, the victim positively identified the defendant from a photographic lineup as the person who shot him. The victim also identified the driver of the car, and co-defendant, as Anthony McGlother.[1] The victim was unable to identify the third person in the car.

The victim testified that he was just sitting on the back of his cousin's car around noon on December 7, 1997, when a car circled the block and then came back and stopped at the end of the driveway where he was sitting. According to the victim, all three men were dressed completely in black — black pants, shirts, and caps. When the victim looked up, all three jumped out of the car and ran up to him. The victim recognized the defendant as the individual he knew as "Popsicle." The driver of the car, Anthony McGlother, told the victim to take off his jacket and shoes and empty his pockets. The victim complied without offering any resistance because all three men were armed with weapons.[2] The victim had $25 and a beeper in his pocket. He denied having rock cocaine also on his person.

Once the victim had given the three men everything they asked for, they started to get back in their car, telling the victim to walk away from them. The victim started to walk down the street but turned when he heard the driver say, "Shoot him, Popsicle." At that point, the victim turned and saw the defendant raise his gun, pull the trigger, and shoot him.

The defendant, himself, was the only witness presented by the defense. He denied any involvement with the offenses. He said that on the day of the robbery, he had been with a friend named "Bubba." They were at the apartment of Kenya Cox when Anthony McGlother arrived and said that he "had just got somebody," which the defendant took to mean that he had robbed or shot someone. Based upon the description, the defendant understood that Antonio Grisham was the victim. He and McGlother argued, and McGlother then shot him twice in the back. He said that

---

[1] Anthony McGlother, a.k.a. Anthony Jackson, pled guilty to one count of especially aggravated robbery and two counts of aggravated assault. The record is unclear as to the victims in the two counts of aggravated assault. McGlother received a sentence of fifteen years.

[2] According to the victim, the guns were "Mack Ten or Mack eleven" type weapons. He described the weapons as ones where "if you hold the trigger the bullets will keep coming out."

neither Kenya Cox nor "Bubba," whom he later identified as Larry Jones, was present when McGlother told of the incident with the victim.

## ANALYSIS

### Issue I.  Sufficiency of the Evidence

The defendant argues first that the evidence presented at trial was insufficient to convict him of either especially aggravated robbery or attempted second degree murder.  Specifically, he contends that there was no physical evidence presented that implicated him in the crimes and no corroboration of the victim's testimony.  The defendant maintained at the trial and at the sentencing hearing that he was simply not present when the crimes occurred.

When a defendant challenges the convicting evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that might be drawn from the evidence.  See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).  The credibility of the witnesses, the weight given their testimony, and the reconciliation of conflicts in the proof are matters entrusted exclusively to the triers of fact.  See Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978) (citing Withers v. State, 523 S.W.2d 364 (Tenn. Crim. App. 1975)).

In this state, "great weight is given to the result reached by the jury in a criminal trial."  State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993).  A guilty verdict approved by the trial judge removes the presumption of innocence with which the defendant is initially cloaked at trial and raises in its place a presumption of guilt on appeal.  See State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).  The burden of overcoming this presumption of guilt rests with the defendant.  Id.  In a criminal action, a conviction may be set aside only when the reviewing court finds that the "evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt."  Tenn. R. App. P. 13(e); see also Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979) (concluding that courts reviewing sufficiency of evidence must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").

### A.  Especially Aggravated Robbery

As we have noted, the defendant claimed that he was not present when the crimes were committed but was rather at the apartment of Kenya Cox in "Dodge City," a north Nashville housing complex.

The defendant argues that, even if he were present, the evidence shows that he was "merely" present at the scene and in no way responsible for taking the clothes, money, and beeper from the victim.  The State contends that, even if Anthony McGlother was the one of the three who actually ordered the victim, at gunpoint, to give up his belongings, the defendant clearly played an important

part in the robbery and shooting and was therefore criminally responsible for the acts of the co-defendant, McGlother.

A person criminally responsible for the conduct of another may be charged with commission of the offense. See Tenn. Code Ann. § 39-11-401(b) (1997). This theory of guilt is based on the common law provision of criminal liability for principals, accessories before the fact, and aiders and abettors. See id. § 39-11-401, Sentencing Commission Cmts.; see also Presley v. State, 161 Tenn. 310, 316, 30 S.W.2d 231, 233 (1930) (concluding that the aiding and abetting of one brother in holding back bystanders while the other brother attacked his wife rendered the acts of assistance indisputably unlawful). The common law terms are no longer used; instead the Code provides that "any person may be charged as a party if he or she is criminally responsible for the perpetration of the offense." Tenn. Code Ann. § 39-11-401, Sentencing Commission Cmts. A person is criminally responsible for the conduct of another if "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]" See id. § 39-11-402(2).[3] This wording is intended to include the conduct of defendants formerly known as accessories before the fact and aiders and abettors. See id. § 39-11-402, Sentencing Commission Cmts.

Criminal responsibility is not a separate crime. See State v. Lemacks, 996 S.W.2d 166, 170 (Tenn. 1999). "It is solely a theory by which the State may prove the defendant's guilt of the alleged offense, . . . based upon the conduct of another person." Id. The legislative intent in promulgating the theory of criminal responsibility is clearly to "embrace the common law principles governing aiders and abettors and accessories before the fact." State v. Carson, 950 S.W.2d 951, 955 (Tenn. 1997).

While guilt by association is a doctrine that is thoroughly discredited, see Uphaus v. Wyman, 360 U.S. 72, 79, 79 S. Ct. 1040, 1045-46, 3 L. Ed. 2d 1090 (1959), this court has noted that, under the theory of criminal responsibility, presence and companionship with the perpetrator of a felony

_____

[3]The language of this section actually sets forth three ways in which a person may be found criminally responsible for an offense committed by the conduct of another:

> **Criminal responsibility for conduct of another.**—A person is criminally responsible for an offense committed by the conduct of another if:
> (1) Acting with the culpability required for the offense, the person causes or aids an innocent or irresponsible person to engage in conduct prohibited by the definition of the offense;
> (2) Acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense; or
> (3) Having a duty imposed by law or voluntarily undertaken to prevent commission of the offense and acting with intent to benefit in the proceeds or results of the offense, or to promote or assist its commission, the person fails to make a reasonable effort to prevent commission of the offense.

Tenn. Code Ann. § 39-11-402 (1997).

before and after the commission of the crime are circumstances from which an individual's participation may be inferred. See State v. Ball, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998). No particular act need be shown, and the defendant need not have taken a physical part in the crime. See id. Mere encouragement of the principal will suffice. See State v. McBee, 644 S.W.2d 425, 428 (Tenn. Crim. App. 1982). To be criminally responsible for the acts of another, the defendant must: "in some way associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree." State v. Maxey, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994) (quoting Hembree v. State, 546 S.W.2d 235, 239 (Tenn. Crim. App. 1976)). The defendant must "knowingly, voluntarily and with common intent unite with the principal offenders in the commission of the crime." State v. Foster, 755 S.W.2d 846, 848 (Tenn. Crim. App. 1988).

Here, there is no question that the evidence is sufficient to show that the offense of especially aggravated robbery was committed against the victim. "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). A robbery is especially aggravated when it is accomplished with a deadly weapon and the victim suffers serious bodily injury. See Tenn. Code Ann. § 39-13-403(a). Here, the victim was forced by three men, armed with guns, to take off his jacket and shoes and empty his pockets. Those belongings were then taken, and the victim was shot in the stomach. His injuries were extensive, requiring surgery and hospitalization for three weeks.

The victim's neighbor, Justin Davis, testified that the three men were in one car, reached down for something in the car, and pointed to the top of the hill where the victim was sitting, before driving up to the victim. All three got out of the car and approached the victim. All three were armed. The three were all dressed in black, reminiscent of the "uniforms" of gang members. The three were clearly acting in concert. Although it was the driver of the car, co-defendant McGlother, who actually ordered the victim to take off the items of clothing and empty his pockets, there is nothing to indicate that the defendant was merely present. In fact, it was the defendant who fired his gun at the victim at the moment of getaway. Witnesses who were with the victim immediately after the shooting testified that he had no jacket and no shoes on. The victim named the defendant at the scene and later identified both the defendant and co-defendant as the individuals involved in the robbery and shooting. The proof is sufficient to support a conviction of especially aggravated robbery on a theory of criminal responsibility pursuant to Tennessee Code Annotated Section 39-11-402(2). The evidence shows that the defendant intended to aid in the commission of the robbery. This issue is without merit.

### B. Attempted Second Degree Murder

The defendant argues that the evidence is insufficient to support his conviction of attempted second degree murder because that conviction is based solely on the uncorroborated testimony of the victim, Antonio Grisham, which fails to prove the required elements of attempted second degree murder. The State counters that the issue is waived pursuant to the rules of this court. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or

appropriate references to the record will be treated as waived in this court."). We agree with the State that the defendant fails to adequately support this issue. Nevertheless, because it appears that the defendant concluded that a verdict based on identification evidence of a victim alone is insufficient, we address this issue.

In Tennessee, it is "well-established that the identification of a defendant as the person who committed the offense for which he is on trial is a question of fact for the determination of the jury upon consideration of all competent proof." State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993) (citing State v. Crawford, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982)). Likewise, an alibi defense presents an issue of fact to be determined by the jury as exclusive judges of the credibility of witnesses in support of an alibi defense and the weight to be given their testimony. See Crawford, 635 S.W.2d at 705 (citing Green v. State, 512 S.W.2d 641 (Tenn. Crim. App. 1974)). The testimony of a victim alone is sufficient to support a verdict of guilty beyond a reasonable doubt. See State v. Williams, 623 S.W.2d 118 (Tenn. Crim. App. 1981) (sustaining the conviction of defendant of robbery of a McDonald's Restaurant based on identification testimony of assistant manager of restaurant).

Here, the victim named the defendant as the person who had shot him while the victim was lying on the ground, fearing he would die because he was "losing too much blood. I felt my blood leaving me." Two witnesses testified that the victim said that "Popsicle" had shot him: the victim's neighbor, Justin Davis; and the victim's cousin, Christopher Grisham. The victim identified the defendant, both from a photographic lineup and at the trial, as the person known as "Popsicle" and the person who shot him. We conclude that the evidence was sufficient to support a conviction of attempted second degree murder beyond a reasonable doubt.[4] This issue is without merit.

---

[4]To prove attempted second degree murder, the State had to show that the defendant, "acting with the kind of culpability otherwise required for the offense:"

> (1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a)(1)-(3). Second degree murder is the "knowing killing of another." Id. § 39-13-210(a)(1). A person acts knowingly "with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result[.]" Id. § 39-11-106(a)(20). Here, the defendant was told to "shoot him" and, with the victim facing him, fired a powerful and deadly weapon into the victim's stomach and made a quick getaway, leaving the victim bleeding on the ground. The

(continued...)

### Issue II.  Lesser-Included Offenses

### A.  Aggravated Assault

The defendant now concedes that, although argued in his motion for a new trial, aggravated assault is not a lesser-included offense of attempted first degree murder or attempted second degree murder.  This court recently stated in State v. Christopher Todd Brown, No. M1999-00691-CCA-R3-CD, 2000 WL 262936, at *2 (Tenn. Crim. App. Mar. 9, 2000), that, pursuant to the test set out by our supreme court in State v. Burns, 6 S.W.3d 453, 466-67 (Tenn. 1999), "assault and aggravated assault are not lesser included offenses of attempted first degree murder."  Brown, 2000 WL 262936, at *2.  Therefore, the trial court did not err in refusing to charge the jury as to aggravated assault.

### B.  Facilitation of a Felony

The defendant contends that the trial court erred in failing to charge the jury as to the lesser-included offense of facilitation of especially aggravated robbery, attempted first degree murder, and attempted second degree murder.  Pursuant to Tennessee Code Annotated Section 39-11-403(a):

> A person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony.

In the case of facilitation, the offender, "though facilitating the offense, lack[s] the intent to promote, assist or benefit from the offense."  Tenn. Code Ann. § 39-11-403, Sentencing Commission Cmts. This court has concluded that "'virtually every time one is charged with a felony by way of *criminal responsibility* for the conduct of another, *facilitation* of the felony would be a lesser included offense.'"  State v. Utley, 928 S.W.2d 448, 451 (Tenn. Crim. App. 1995) (quoting State v. Lewis, 919 S.W.2d 62, 67 (Tenn. Crim. App. 1995)).  We conclude that criminal responsibility for facilitation of especially aggravated robbery, attempted first degree murder, and attempted second degree murder are lesser-included offenses of criminal responsibility for these three offenses.

Our inquiry does not end here.  "Whether or not a particular lesser-included offense should be charged to the jury depends on whether proof in the record would support the lesser charge." State v. Burns, 6 S.W.3d 453, 468 (Tenn. 1999).  The trial court must complete a two-step analysis in determining whether to charge the jury on a lesser-included offense:

> First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser-included offense.  In

---

[4](…continued)
elements of attempted second degree murder were proved beyond a reasonable doubt.

making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense.

Id. at 469.

The degree of the defendant's culpability for the robbery was placed at issue only by the defendant himself, who, testifying as the only witness for the defense, stated, "I don't know nothing about that. I wasn't a part of the robbery." According to the defendant's testimony, he learned of the robbery and shooting only after the fact and did not participate in any fashion. There was evidence presented to show that the defendant, contrary to his assertion, was an active participant in the robbery, whether or not he was the one who actually ordered the victim to turn over his shoes, jacket, money, and beeper. He was the party, armed with a deadly weapon, responsible for the serious bodily injury suffered by the victim. The evidence supported the level of culpability required in the criminal responsibility statute, that is, that the defendant acted "with intent to promote or assist the commission of the offense." Tenn. Code Ann. § 39-11-402(2). The jury was properly instructed as to criminal responsibility for a crime committed by another. For the defendant to have been found guilty of the lesser-included crime of facilitation of especially aggravated robbery, reasonable minds would have had to conclude that the defendant acted "without the intent required for criminal responsibility under § 39-11-402(2)." Id. § 39-11-403(a). In other words, reasonable minds would have had to conclude that the defendant did not act with the intent to promote or assist co-defendant McGlother in the crime but that the defendant was simply along for a ride or that his participation was merely accidental or unintentional. Such a conclusion would be contrary to the evidence; therefore, the trial court did not err in failing to instruct the jury as to the lesser-included offense of facilitation of especially aggravated robbery. Likewise, we reach a similar conclusion as to whether the trial court should have instructed as to facilitation of attempted first degree murder and attempted second degree murder. The victim testified that it was the defendant who shot him. The defendant testified that he was not present as the victim was shot, but learned of it later at the apartment of Kenya Cox. Thus, the defendant was either the shooter, or he was not present. We conclude that the trial court did not err in not instructing as to facilitation of especially aggravated robbery or attempted first or second degree murder, for the facts did not justify instructions on these lesser charges.

**Issue III.  Sentencing**

In his final issue, the defendant contends that the trial court erred in its application of enhancement and mitigating factors and that his sentence is, therefore, excessive. The trial court sentenced the defendant to an effective sentence of twenty-one years, one year more than the presumptive, mid-range starting point for especially aggravated robbery, a Class A felony, where the defendant is a Range I offender. Specifically, the defendant argues that the trial court erred in

applying enhancement factor (2), that the defendant "was a leader in the commission of an offense involving two (2) or more criminal actors." Id. § 40-35-114(2). The defendant further argues that the trial court erred in failing to apply the requested mitigating factor (6), that the defendant, "because of youth or old age, lacked substantial judgment in committing the offense." Id. § 40-35-113(6).

When an accused challenges the length of his sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987).

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentences are erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentences imposed by the trial court are erroneous.

In determining the appropriate sentence for a felony conviction, the sentencing court, if there are enhancement factors but no mitigating factors, may set the sentence above the minimum in that range but still within the range. See Tenn. Code Ann. § 40-35-210(d) (1999 Supp.); State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996). There is no mathematical formula of valuating the enhancement factors to calculate the appropriate sentence. See generally Boggs, 932 S.W.2d at 475. "Rather, the weight to be afforded an existing factor is left to the trial court's discretion so long as the court complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record." Id. at 475-76 (citations omitted).

The trial court stated the following concerning enhancement and mitigating factors:

> All right. The Court has looked at this matter. And the Court is of the opinion that enhancing factors one and two apply in this case. I won't apply enhancing number nine.

-10-

I don't find any mitigating factors with regard to the defendant in this cause.[5]

As to enhancement factor (2), there was no evidence to support a conclusion that the defendant was the leader in these crimes. It was McGlother who drove the car, ordered the victim to give up his property, and ordered the defendant to shoot the victim. We conclude that enhancement factor (2) does not apply to this defendant.

The defendant does not challenge the application of enhancement factor (1). Nevertheless, this factor was also erroneously applied. In 1995, our legislature amended Section 40-35-114 to include enhancement factor (20), which allows enhancement of a sentence if the defendant "was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult." Tenn. Code Ann. § 40-35-114(20). Thus, "for offenses committed on or after July 1, 1995, a court may only consider juvenile offenses under factor (20) and further, may only consider offenses that would have been felonies if committed by an adult." State v. Brent Brown, No. 02C01-9710-CC-00419, 1998 WL 742350, at *2 (Tenn. Crim. App. Oct. 26, 1998). The State filed a Notice of Enhanced Punishment based on two juvenile convictions: theft over $500 (adjudicated guilty on 1/13/94) and possession of a controlled substance for resale (adjudicated guilty on 8/17/95). The presentence report showed no adult criminal record. Because each of the juvenile convictions would have been a felony if committed by an adult, enhancement factor (20) is applicable. We conclude that enhancing the Class A felony conviction for especially aggravated robbery from the presumptive mid-point of twenty years to twenty-one years is appropriate.

As to mitigating factors, the defendant asserts that because of his youth, he lacked substantial judgment in committing the offense. Our supreme court has stated that, when considering mitigating factor (6), "courts should consider the concept of youth in context, i.e., the defendant's age, education, maturity, experience, mental capacity or development, and any other pertinent circumstance tending to demonstrate the defendant's ability or inability to appreciate the nature of his conduct." State v. Adams, 864 S.W.2d 31, 33 (Tenn. 1993). There was no issue raised concerning the defendant's mental capacity. In fact, the defendant claimed to have received his GED in 1996 at the Nashville Transition Center. The record indicates that the defendant was no stranger to the juvenile justice system and has continued to violate the law as an adult. The defendant was placed on parole following his conviction for theft of property over $500 and apparently failed to

---

[5]Some confusion followed concerning the presumptive mid-range starting point in determining the appropriate length of a sentence for a Class A felony. The trial court, in considering the sentence first for the especially aggravated robbery conviction, the Class A felony, apparently started with the minimum of fifteen years and enhanced it to seventeen rather then starting at the presumptive mid-point of twenty years. Once this error was noted, the trial court began at the presumptive mid-point and enhanced the sentence only one year to twenty-one years. The trial court then correctly started with the presumptive minimum sentence of eight years for the attempted second degree murder conviction, the Class B felony, and then enhanced the sentence to ten years. Since the trial court was applying all enhancement factors to both convictions, it is not clear what weight was given to enhancement factor (2), which we have now determined was erroneously applied, or to enhancement factor (1), which we have also determined was erroneously applied. Our review is, therefore, *de novo* without a presumption of correctness.

-11-

meet the requirements of parole. We found nothing in the record to indicate that the defendant, who was less than a month from turning nineteen when this crime occurred, was unable, because of his youth, to appreciate the nature of his conduct. Mitigating factor (6) is not applicable.

We conclude that enhancement factor (20) applies to this defendant. We conclude also that no mitigating factors apply. The sentence as imposed is appropriate.

## CONCLUSION

We conclude that the evidence was sufficient to support convictions for especially aggravated robbery and for attempted second degree murder. We conclude further that it was not error for the trial court to fail to charge the jury as to aggravated assault because it is not a lesser-included offense of attempted second degree murder. The trial court did not err in failing to charge the jury as to facilitation of a felony as a lesser-included offense of especially aggravated robbery or of attempted first or second degree murder. The judgment of the trial court is affirmed.

_____
ALAN E. GLENN, JUDGE