IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 12, 2006

## STATE OF TENNESSEE v. CHRISTOPHER KYLE

**Appeal from the Criminal Court for Shelby County**
**No. 03-08001    Chris Craft, Judge**

_____

**No. W2005-01339-CCA-R3-CD  - Filed October 13, 2006**

_____

The appellant, Christopher Kyle, also known as "Snap," was convicted by a jury of second degree murder and theft of property. As a result, the trial court sentenced the appellant to twenty-three years as a violent offender for second degree murder and eleven months and twenty-nine days for theft of property. The sentences were ordered to run concurrently. On appeal, the appellant argues that the evidence was insufficient to support his conviction for second degree murder, that the trial court erred in instructing the jury on the theory of criminal responsibility and that his sentence is excessive. For the following reasons, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

Phyllis Aluko, Diane Thackery and David Bell Assistant Public Defenders, Memphis, Tennessee, for the appellant, Christopher Kyle.

Paul G. Summers, Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In November of 2003, the appellant was indicted for the first degree premeditated murder of Lurinzo Cosey, Jr., the victim. The appellant was also indicted for felony murder and especially aggravated robbery.

On July 20, 2003, Linda Wade had known the appellant for about two or three months. Linda Wade described the appellant and Mr. Cosey as good friends. That evening around 8:00 p.m., the victim came over to Ms. Wade's house in Memphis, Tennessee, with his daughter. The appellant

asked Ms. Wade if she and Mr. Cosey wanted to go to the casino in Tunica, Mississippi that night. The three adults left Ms. Wade's house and went to Mr. Cosey's mother's house where Cosey changed clothes.

According to Mr. Cosey's mother, Gwendolyn Cosey, she last saw Mr. Cosey that evening when he left her house with the appellant and Linda Wade. The three individuals left in Cosey's car, a 1993 Honda Accord.

On the way to the casino in Tunica, Mississippi, Mr. Cosey drove and Linda Wade rode in the passenger seat. The appellant was seated in the back of the car. The trio planned to exchange some counterfeit money for cash at the casino.

Later that night, at approximately 10:30 or 11:00 p.m., Wanda Wade, the mother of the Mr. Cosey's child, saw Cosey, the appellant and Linda Wade at Fitzgerald Casino in Tunica, Mississippi. Wanda Wade worked at the casino and remembered giving the appellant change for a counterfeit $100 bill. Linda Wade is Wanda Wade's aunt. Wanda Wade knew the appellant because Linda Wade and the appellant were dating at the time.

After the appellant exchanged the counterfeit money, the three individuals had drinks at the casino. When the three left the casino in the victim's car, Linda Wade drove. According to Linda Wade, Mr. Cosey rode in the passenger seat and placed his hand on top of hers to help her shift the gears of the car as she did not know how to drive a stick shift.

At trial, Linda Wade testified that as they were driving back to Memphis, she heard a loud sound. She thought that it came from outside the car, so she slowed down. Then she realized that Cosey was crying and hollering, pleading with the appellant for his life.

Linda Wade claimed that the appellant had a gun and had shot the victim. At that time, Mr. Cosey jumped out the front passenger window of the car feet first. Ms. Wade stopped the car. According to Ms. Wade, the appellant then stepped out of the car, walked around to the driver's side and threatened her with the gun. The appellant then walked to the rear of the car for a few moments. When the appellant returned to the front of the car, he pushed Ms. Wade over to the passenger side of the car and drove the car back to her house.

When they arrived at Ms. Wade's house, the appellant instructed Ms. Wade to follow him in her car. The appellant took the radio and some other "stuff" out of Mr. Cosey's car prior to dumping it at American Way or Airways. The two rode together in Ms. Wade's car to her house where the appellant told her to change clothes and get some sleep.

Wanda Wade attempted to call Mr. Cosey on his cell phone at around 11:45 p.m. on the night of July 20, but was unable to get in touch with him. Later, Wanda Wade called Linda Wade several times. Linda Wade finally answered the phone at around 2:00 a.m. Linda Wade claimed that she did not know where Cosey was at the time.

At around 2:00 a.m. on July 21, 2003, Otis McGowan discovered Cosey's body on the side of the road. Mr. McGowan flagged down a truck that took him to the Mapco station where he called 911.

The following morning, the appellant and Linda Wade drove to a store in Greenwood, Mississippi called Phat Wheels to sell the radio from Cosey's car. The appellant and Linda Wade told the owner of the store that they needed to sell the radio to get money so that they could get back to Memphis. The owner of the store knew the appellant from high school but refused to buy the radio. Instead, the owner told the appellant that he could sell the radio for him and gave the appellant twenty dollars so that the victim and Linda Wade could make the return trip to Memphis.

After getting the money for the radio, the appellant and Linda Wade went to the appellant's mother's house. On the way back to Memphis, Linda Wade received information from her son that the police were looking for her in connection with the victim's death.

When Ms. Wade was initially questioned by the police, she claimed that she did not know anything about the shooting and that someone else was with her and the appellant. At that point, the police showed Ms. Wade a video tape of the appellant exchanging money at the casino. Ms. Wade then changed her story, telling the police that the appellant killed Cosey because Cosey gave him counterfeit money that he received from one of his drug customers.

Mr. Cosey's car was found in a vacant lot by a Memphis Police Officer the next day. The front passenger seat of the car had several blood stains on it and the radio was missing. When the blood samples in the car were analyzed, they matched Cosey's blood.

According to the medical examiner, Cosey died of multiple injuries and had eight gunshot wounds. Six of the gunshot wounds were to the back and two of the gunshot wounds were to the front chest area of the body. Two of the shots were close contact wounds, indicating that the victim was shot with the gun less than one inch away from his body.

At trial, the jury also heard testimony from Kimberly Wade, Linda Wade's thirteen-year-old daughter. According to Kimberly Wade, prior to the victim's death, she overheard the appellant on the telephone threatening to kill Cosey. Specifically, she heard the appellant say that he was "going to get that man," in reference to the victim. Additionally, Kimberly Wade saw the appellant holding a gun on the evening that Cosey was murdered and remembered that the appellant and her mother acted strangely upon their return from the casino. Kimberly Wade stated that her mother "looked like she wasn't in her right state of mind" and that the appellant "looked like he had did [sic] something wrong . . . because he was sweating and stuff like that."

On cross-examination, Kimberly Wade admitted that she did not tell her mother about overhearing the appellant's phone conversation. Kimberly Wade also admitted that she did not tell the police that her mother and the appellant were acting strangely the night of the murder because they did not ask her about it when she was questioned.

The appellant took the stand in his own defense. He testified that he met Cosey while the two were incarcerated and that the two men "deal[t] drugs inside the prison." When they were released from incarceration, the appellant claimed that they both continued to sell marijuana. Linda Wade would drive to Greenville, Mississippi to pick up the marijuana, the appellant would "break down" or divide the marijuana into half, quarter, or whole pounds, and Cosey would sell it. According to the appellant, Linda Wade kept the marijuana in a drawer in her bedroom.

The appellant described the events of the night of July 20, 2003, as follows:

We got in the car. Linda drove. And we got on the highway. And we was [sic] coming down the highway. That's when I was sitting back in the backseat. [The victim] was on the passenger side. . . . [The victim] reached around in the middle of the car like in between the seat and put a gun to my face. At first I thought he was playing. I was like, like that. When he came back with it like this, that's when I grabbed it. When I grabbed it, it went off. When it went off, when I finally got possession of it, I shot two more times to get him up off. And once I shot them [sic] two times, he went back. And I went back to the back part of the car and that's when he went out the window.

At that point, the appellant stated that he moved into the driver's seat of the car and Linda Wade moved over to the passenger seat because the car was stuck in gear. The appellant continued by saying:

And when I back up to it [an eighteen-wheeler tire that was on the side of the road] she [Linda Wade] was like that ain't him but I see him. And she jumped out the car. I was fixing to back up a little bit more. But when I turned around, she ran back to the car. And when she ran back to the car, that's when she grabbed the gun off from between the console and the back of the passenger seat and fired two shots. I [sic] like, what you doing? She [sic] like, she's like, he was going to kill you. Let's go. So I took off. And when I took off she directed me how to get to the house.

When the two of them reached Linda Wade's house, Linda Wade told the appellant that they had to get rid of the victim's car. According to the appellant, Linda Wade took the car radio from the dashboard. Linda Wade followed the appellant in her car while the appellant drove the victim's car to a vacant lot. The two then went back to Linda Wade's house.

The appellant testified that the next morning, he and Linda Wade drove to Greenville, Mississippi where they tried to sell the car radio at Phat Tires. He and Linda Wade eventually left the store and returned to Memphis where they were contacted by the police in connection with the victim's death.

At the conclusion of the proof, the jury found the appellant guilty of the lesser-included offenses of second degree murder and theft of property. After a sentencing hearing, the trial court

sentenced the appellant to eleven months and twenty-nine days for theft of property and twenty-three years as a violent offender for second degree murder. The trial court ordered the sentences to run concurrently.

After the denial of a motion for new trial, the appellant filed a timely notice of appeal. The following issues are presented for our review: (1) whether the evidence was sufficient to support the conviction for second degree murder; (2) whether the trial court erred by instructing the jury on criminal responsibility; and (3) whether the sentence imposed by the trial court was excessive.

Analysis
Sufficiency of the Evidence

Initially, the appellant complains that there was insufficient evidence "to rebut his claim of self defense." Specifically, the appellant argues that "the dearth of evidence presented at trial would establish that the defendant did not act in self-defense would prevent a rational trier of fact from finding him guilty beyond a reasonable doubt of murder second degree." The State contends that the appellant waived the issue for failing to cite to authority as required by Tennessee Court of Criminal Appeals Rule 10(b) and, in the alternative, that the evidence was sufficient to support the verdict.

At the outset, we acknowledge that the appellant's first brief cites Jackson v. Virginia, 443 U.S. 307 (1979), as the only authority for his sufficiency of the evidence argument. The appellant also filed a reply brief that cites some additional authority, albeit minimal, for his argument. Consequently, the appellant has not waived the issue on appeal.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779.

Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990). Moreover, a conviction may be based entirely on circumstantial evidence when the facts are "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the defendant and the defendant alone." State v. Smith, 868 S.W.2d 561, 569 (Tenn. 1993) (quoting State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985)). If the trier of fact can determine from the proof that all other reasonable theories except that of guilt are excluded, the evidence is sufficient.

A conviction for second degree murder requires proof that the defendant unlawfully and knowingly killed another. Tenn. Code Ann. §§ 39-13-201, -210(a). A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result. Tenn. Code Ann. § 39-11-302(b).

At trial, the appellant relied on a defense of self-defense to justify the shooting of the victim. Tennessee defines self-defense as follows:

> A person is justified in threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds. There is no duty to retreat before a person threatens or uses force.

Tenn. Code Ann. § 39-11-611(a). Self-defense requires a reasonable belief that "force is immediately necessary to protect against the other's use or attempted use of unlawful force" and that there was an "imminent danger of death or serious bodily injury" to the defendant. Tenn. Code Ann. § 39-11-611(a). When a defendant relies upon a theory of self-defense, the State bears the burden of proving that the defendant did not act in self-defense. State v. Sims, 45 S.W.3d 1, 10 (Tenn. 2001). Further, it is well-settled that whether an individual acted in self-defense is a factual determination to be made by the jury as the sole trier of fact. State v. Ivy, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993). Upon our review of a jury's rejection of a claim of self-defense, "in order to prevail, the [appellant] must show that the evidence relative to justification, such as self-defense, raises, as a matter of law, a reasonable doubt as to his conduct being criminal." State v. Clifton, 880 S.W.2d 737, 743 (Tenn. Crim. App. 1994).

It is obvious in this case that the jury chose to reject the appellant's claim of self-defense. The testimony concerning the events immediately prior to the appellant's attack on the victim was contradictory. Linda Wade testified that she heard a loud sound, then heard the appellant pleading for his life. She later realized that the sound she heard was a gunshot. Prior to the shot, Linda Wade did not hear any arguing going on between the appellant and the victim. The appellant claimed that

the victim pulled the gun out first and fired two shots at him before he could wrestle the gun away from the victim and fire two shots back at the victim. The victim then jumped out the window of the car. However, testimony from the police indicated that there was only one bullet hole in the passenger seat of the car and no bullet holes in the backseat of the car. Further, the medical examiner testified that the victim was shot six times from the back and two times from the front and that the two shots to the front of the chest were made at close range.

It was within the jury's purview to reject the self-defense theory. See State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997). Further, the appellant's argument is basically an argument about the credibility of the witnesses. Again, the jury is entrusted to resolve questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence. Pruett, 788 S.W.2d at 561. Viewing the evidence in the light most favorable to the State, we determine that there was sufficient evidence to convict the appellant of the knowing killing of the victim. Thus, the evidence was sufficient to sustain a verdict for second degree murder. This issue is without merit.

### Jury Instruction on Criminal Responsibility

Next, the appellant claims that the trial court improperly charged the jury regarding criminal responsibility for the conduct of another because there was insufficient evidence to warrant an instruction on criminal responsibility. Specifically, the appellant contends that without evidence that he intentionally assisted Linda Wade in shooting the victim or evidence that he intentionally accepted assistance from Linda Wade in carrying out the shooting, there was an insufficient basis for an instruction on criminal responsibility. The State again contends that the appellant waived the issue for failing to cite any legal authority.[1] In the alternative, the State argues that the evidence supports the trial court's instruction on criminal responsibility.

Criminal responsibility for the acts of another is defined as, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense . . . ." Tenn. Code Ann. § 39-11-402(2). Criminal responsibility is not a separate crime; rather, it is "solely a theory by which the State may prove the defendant's guilt of the alleged offense . . . based upon the conduct of another person." State v. Lemacks, 996 S.W.2d 166, 170 (Tenn. 1999). Under a theory of criminal responsibility, an individual's presence and companionship with the perpetrator of a felony before and after the commission of an offense are circumstances from which his or her participation in the crime may be inferred. See State v. Ball, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998). No particular act need be shown, and the defendant need not have taken a physical part in the crime in order to be held criminally responsible. See id. To be criminally responsible for the acts

---

[1]Again, the appellant's first brief to this Court cites one statute, the statute defining criminal responsibility, in this section of his argument. The reply brief adds the citation of one additional case in support of his argument. While certainly not persuasive on the issue, we find it unnecessary to punish the appellant for a brief that technically complies with the rules.

of another, the defendant must "'in some way associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree.'" State v. Maxey, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994) (quoting Hembree v. State, 546 S.W.2d 235, 239 (Tenn. Crim. App. 1976)).

Under the United States and Tennessee Constitutions, a defendant has a constitutional right to trial by jury. U.S. Const. amend VI; Tenn. Const. art. 1, § 6; see State v. Bobo, 814 S.W.2d 353, 356 (Tenn. 1991); Willard v. State, 130 S.W.2d 99 (Tenn. 1939). This right encompasses the defendant's right to a correct and complete charge of the law. State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). In consequence, the trial court has a duty "to give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986); see State v. Forbes, 918 S.W.2d 431, 447 (Tenn. 1990); see also Tenn. R. Crim. P. 30. The duty to charge the jury arises when an issue is fairly raised by the evidence. State v. Williams, 914 S.W.2d 940, 949 (Tenn. Crim. App. 1995); State v. McPherson, 882 S.W.2d 365, 374 (Tenn. Crim. App. 1994). This Court has held that "it is well-settled that an accused is entitled to an affirmative instruction on every issue fairly raised by the evidence." State v. Leaphart, 673 S.W.2d 870, 873 (Tenn. Crim. App. 1983) (citing Lester v. State, 370 S.W.2d 405 (Tenn. 1963); Hicks v. State, 533 S.W.2d 330 (Tenn. Crim. App. 1975)). In evaluating claims of error in the jury charge, this Court must review the charge in its entirety and read it as a whole. State v. Leach, 148 S.W.3d 42, 58 (Tenn. 2004). A charge shall be considered prejudicially erroneous if it fails to submit the legal issues fairly or if it misleads the jury as to the applicable law. State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997).

In the case herein, the trial court overruled the appellant's objection to the instruction on criminal responsibility, concluding that "there's no question that if taking the State's theory in the best light . . . he [the appellant] promoted and assisted the commission of the stereo conversion and also benefitted in the proceeds or results of." Further, the trial court determined that the jury could infer from the testimony that Linda Wade and the appellant were "united as one" in both the homicide and the robbery/theft of the victim. The trial court instructed the jury as follows:

> Any defendant is criminally responsible as a party to the offenses charged and included in this indictment if the offense was committed by the defendant's own conduct, by the conduct of another for which the defendant is criminally responsible, or by both. Each party to the offense may be charged with the commission of the offense, or to benefit in the proceeds or results of the offense.
>
> The defendant is criminally responsible for an offense committed by the conduct of another if, acting with the intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the defendant solicits, directs, aids, or attempts to aid another person to commit the offense. A defendant who is criminally responsible for an offense may be found guilty not only of that offense but also for any other offense or offenses committed by another, if you find beyond a reasonable doubt that the other offense or offenses committed were

-8-

natural and probable consequences of the original offense for which the defendant is found criminally responsible, and that the elements of the other offense or offenses that accompanied the original offense have been proven beyond a reasonable doubt.

Before you find any defendant guilty of being criminally responsible for said offense committed by the conduct of another, you must find that all the essential elements of said offense have been proven by the state beyond a reasonable doubt.

After reviewing the evidence and the charge, we conclude that the charge on criminal responsibility was fairly raised by the evidence. If the jury believed the appellant's theory of self-defense in shooting the victim, there was still proof from which the jury could have concluded that the appellant was criminally responsible for the victim's death. The proof as demonstrated by the testimony of the appellant, indicated that the appellant had the gun that Linda Wade later used to allegedly shoot the victim and that the appellant got into the driver's seat of the car and left the scene of the crime after Linda Wade allegedly shot the victim. Thus, the jury could have inferred that the natural and probable consequences of the appellant's actions resulted in the death of the victim. Further, there was evidence to support an instruction on criminal responsibility as to the theft of the radio. The appellant suggested that it was Linda Wade who stole the radio from the car and wanted to sell it. The proof indicated that the day after the victim's death, the appellant took Linda Wade to Greenville, Mississippi to introduce her to the owner of Phat Wheels and help Linda Wade get money for the radio. Even though the owner of Phat Wheels did not buy the radio, the owner gave the appellant and Linda Wade twenty dollars in exchange for the radio and offered to sell the radio for them. Thus, the jury could have inferred that the appellant benefitted from the theft of the radio by ultimately receiving money for the radio from the victim's car. The trial court did not err by instructing the jury on the theory of criminal responsibility. This issue is without merit.

Sentencing

Finally, the appellant claims that the trial court imposed an excessive sentence for his second degree murder conviction. Specifically, the appellant argues that the trial court "should have given more weight to the evidence presented as mitigating factors." The State counters that the trial court properly applied enhancing factors and discounted mitigating factors to arrive at a proper sentence of twenty-three years.

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for

rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Ashby, 823 S.W.2d at 169. In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210(a), (b), -103(5); State v. Williams, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995). In balancing these concerns, a trial court should start at the presumptive sentence, enhance the sentence within the range for existing enhancement factors, and then reduce the sentence within the range for existing mitigating factors. Tenn. Code Ann. § 40-35-210(e).[2] No particular weight for each factor is prescribed by the statute. See State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995). The weight given to each factor is left to the discretion of the trial court as long as it comports with the sentencing principles and purposes of our code and as long as its findings are supported by the record. Id.

Turning more specifically to the facts of this case, the appellant was convicted of second degree murder, a class A felony. For class A felonies, the starting point for sentencing determinations is the midpoint of the range. See Tenn. Code Ann. § 40-35-210(c).[3] Undisputably, the appellant was a Range I standard offender; thus, for second degree murder, twenty years was the presumptive sentence against which the trial court was to balance any mitigating and enhancement factors. Tenn. Code Ann. § 40-35-112(a)(1).

The trial court made the following findings at the sentencing hearing:

[2]We note that the Tennessee Supreme Court has determined that despite the ability of trial judges to set sentences above the presumptive sentence based on the finding of enhancement factors neither found by a jury or admitted by a defendant, Tennessee's sentencing structure does not violate the Sixth Amendment and does not conflict with the holdings of Blakely v. Washington, 542 U.S. 296 (2004), United States v. Booker, 543 U.S. 220 (2005), or United States v. FanFan, the case consolidated with Booker, because "the Reform Act [of Tennessee] authorizes a discretionary, non-mandatory sentencing procedure and requires trial judges to consider the principles of sentencing and to engage in a qualitative analysis of enhancement and mitigating factors . . . all of which serve to guide trial judges in exercising their discretion to select an appropriate sentence within the range set by the Legislature." State v. Gomez, 163 S.W.3d 632, 661 (Tenn. 2005). Effective July 1, 2005, after the appellant's sentencing hearing herein, the Tennessee General Assembly amended the sentencing act to reflect the advisory nature of enhancement factors.

[3]After July 1, 2005, the Tennessee General Assembly amended this statute to reflect that the presumptive sentence is the minimum sentence in the range, regardless of the class of the felony. The appellant in the case herein was sentenced prior to July 1, 2005.

As to [the appellant's] sentencing on the murder in the second degree charge, I find the following factors: I find in factor two, the defendant has a previous history of criminal behavior in addition to those necessary to establish the appropriate range. I can't really find criminal convictions. There is something in the presentence report about being on probation for a drug case. I'm not really sure what kind of conviction that was. It could have been diversion as far as I know. But the defendant did admit during the trial that he sold drugs, which is criminal behavior. So I'm going to consider factor number two. I'm not going to give it a lot of weight but I'm going to consider factor two, the fact that the defendant is an admitted drug dealer. In fact, he testified that a lot of this killing and everything took place around drugs.

I cannot find the defendant was a leader in the commission of an offense involving two or more criminal actors. The girlfriend was here and testified in the trial, testified that she didn't know about it. Although she continued to drive him away, she felt she was under a certain amount of threats or fear. She went with him to cash - - to sell the stereo to the place in Mississippi.

. . . .

But I can't say that she had anything to do with the commission of the offense. Obviously, he would be the leader if that were true, but I can't find factor three by a preponderance of the evidence. Number six, defendant treated the victim to be - - or allowed the victim to be treated with exceptional cruelty. Although it was cruel being shot several times, that's not in our case law what's called exceptional cruelty. There was no mutilation or anything like that or any torture. It was just immediate shootings and then once the victim left the car, then shooting him again but there was no torture or any other mutilation or anything that would be exceptionally cruel, although it was cruel.

And I can't find factor seven, although the personal injuries inflicted upon the victim were great in that he died, that's implicit in the murder in the second degree and is an element of the offense. By statute I can't consider that.

I do consider factor ten, that he possessed or employed a firearm. I don't find form the evidence that he took the gun away from the victim in self-defense and things like that, they went off or things like that. I find he just possessed a firearm, even though the jury did not find that the killing was to rob him. I found that he did possess and employ the firearm during the commission of the offense of murder. And also the theft, obviously.

-11-

Number 14, I cannot find that the felony was committed while he was on probation because it has to be from a prior felony conviction and there's no proof that it was.

So, I'm finding factor two, which I don't give that much weight and number two which I do give a fair amount of weight, a firearm.

As far as mitigating factors, he had - - I do not find that the defendant acted in strong provocation. In this case the jury rejected that defense as do I or that substantial grounds exist to excuse his conduct. I don't find those. The fact that he has remorse, do we have that letter that was going to be submitted?

. . . .

This letter says in part Exhibit AA that first, "What I want you to know is I didn't kill your son. The trial is over with so you know I don't have a reason to lie." I don't see anything in here that- - where he says he's sorry for what he did because he is not admitting to the killing, and it was also not written prior to trial. It was written after trial. And it closes with, "Like I said, there's a lot of things that wasn't [sic] brought up in trial and you'll be able to tell all the lies that was [sic]." He does mention God in his letter but not any remorse.

I have submitted in mitigation a certificate of completion of the driving unimpaired program in the jail; anger management program that's undated; a letter from Dr. Schuringa, . . . congratulating someone. It doesn't have the defendant's name on it. It says Dear Student, completing the tier one level of Crossroad bible Institute; a certificate of completion of great truths of the Bible tier one with [the appellant's] name on it; completion of the life skills program in the jail; of the alcohol and drug program in the jail; of the stop the violence program in the jail; . . . .

I also have a certificate of baptism, symbolizes confession of faith in Christ, adoption into the family of god commission for service from December 20, 2003, at 201 Poplar, the jail address, signed by an officiating minister.

This is mitigating that he's applied himself to all of these programs. Under the circumstances, though, with the fact that he basically went down to the casino in this case to forge - - to pass counterfeit bills and then killed a man on the way back,

I just don't think that mitigation would be given enough weight to modify the sentence.

[I] am sentencing him - - starting at 20 years, to 23 years in the Tennessee Department of Correction at 100 percent violent offender after having considered the presentence report and everything else.

Thus, the trial court found that factor two, that the appellant had a previous history of criminal behavior in addition to those necessary to establish the appropriate range, and factor ten, that the appellant possessed or employed a firearm in the commission of the offense applied. Tenn. Code Ann. §§ 40-35-114(2), -114(14). After reviewing the record, we determine that the proof supports the trial court's application of the preceding enhancement factors. The appellant admitted during his testimony that he engaged in criminal behavior. Specifically, the appellant testified that he was incarcerated when he met the victim and that the two men continued to sell drugs after they were released from jail. Further, the appellant admitted that he took counterfeit money to the casino on the night of the murder to exchange for cash. Moreover, the proof established that the appellant shot the victim with a gun. Kimberly Wade testified that she saw the appellant with a handgun when he left her house that evening on the way to the casino. We see no reason to substitute our discretion for that of the trial court with regard to the application of the appellant's remorse as a possible mitigating factor. The letter that the appellant submitted to the victim's family made no mention of remorse or culpability for the victim's death. Further, while we acknowledge and applaud the appellant's satisfactory completion of several jail-house programs, we recognize that the trial court was not required to consider the appellant's participation in these programs in mitigation. See Tenn. Code Ann. § 40-35-113. "The weight afforded mitigating or enhancement factors derives from balancing relative degrees of culpability within the totality of the circumstances . . . . In other words, the weight that is given to any existing factors is left to the trial court's discretion so long as . . . its findings are supported by the record." State v. Marshall, 870 S.W.2d 532, 541 (Tenn. Crim. App. 1993). The trial court's sentencing determination is supported by the record. This issue is without merit.

Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE

-13-